IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW RUIZ, #K89371, | ) |
| | ) |
|       **Plaintiff,** | ) |
| vs. | )   Case No. 20-00034-SMY |
| | ) |
| MR. BATALID, | ) |
| R. SCOTT THOMPSON, | ) |
| JOHN R. BALDWIN, | ) |
| WEXFORD HEALTH SOURCES, INC, | ) |
| WARDEN OF PINCKNEYVILLE | ) |
| CORRECTIONAL CENTER, | ) |
| | ) |
|       **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Andrew Ruiz, an inmate of the Illinois Department of Corrections currently incarcerated at Pinckneyville Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims deliberate indifference to serious medical needs and seeks monetary damages and injunctive relief. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 1): Plaintiff, who is a paraplegic due to gunshot wounds, arrived at Pinckneyville on July 21, 2015. He has bullets in his lungs, abdomen, and spine. Absent timely administration of the proper medications and

medical care, the bullets cause fever, shakes, stabbing leg pains, and colds that accelerate to pneumonia within 48 hours. This information is contained in Plaintiff's medical records. Plaintiff is required to visit the prison hospital daily for treatment and check-ups for rashes, sores, and ineffective pain medication. He faces a substantial risk of developing resistance to medications, contracting diseases, declining health, and untimely death. Plaintiff's medications and medical care were not administered in a regular and timely manner at Pinckneyville.

Plaintiff told Nurse Marsha in the first week of January 2017 that he was having problems breathing, running a fever, and that his feet were swollen. Her response was that she had, and will again, tell Dr. Batalid. Plaintiff believes Nurse Marsha reported his condition to Dr. Batalid.

Plaintiff told Nurse Danniel in January 2018 that he was short of breath, coughing blood, and his feet were swollen. She stated she would tell Dr. Batalid. Plaintiff believes Nurse Danniel reported his condition to Dr. Batalid.

Plaintiff told Nurse Loddy that he was short of breath, coughing blood, running a fever, that his feet were swollen, and that he needed to see a doctor. She told Plaintiff she would tell the doctor and instructed him to put in a sick call request for a nurse follow-up visit.

Plaintiff wrote letters to Scott Thompson and John Baldwin on October 30, 2017 and January 16, 2018 advising them of his breathing issues, pain in his lungs and back, the sores on his feet and legs, and that Dr. Batalid was refusing to treat him. He told Thompson that he was having a hard time breathing and his lungs hurt during a property box check on January 25, 2018, but Thompson just shrugged his shoulders and walked away. During a property box check on March 29, 2018, Plaintiff asked his cellmate to call to Baldwin that he had an emergency. Baldwin, Thompson, and Lt. Wagner came to the cell and he showed them a bloody rag and told them he was sick, coughing and throwing up blood, and was having difficulty breathing. Baldwin told him

to file a sick call request and walked away.[1]

Plaintiff was having shortness of breath and requested x-rays because it felt like he had pneumonia. Dr. Batalid denied his request stating, "You write grievances and complaints on me, now you want a favor from me. You need to think about that next time you are sick. No x-ray. We are done here." Plaintiff filed grievances on April 18 and 20, 2018 about Dr. Batalid denying his request for x-rays and his sick call requests with no responses.

Plaintiff told Dr. Batalid that his urine was cloudy with a strong odor and that he had shortness of breath and pain in his lungs. Dr. Batalid replied that all he would do is provide the same antibiotics for the urine issue that Plaintiff had taken for a month. Dr. Batalid refused to discuss the shortness of breath and pain in his lungs. Two weeks later Plaintiff was rushed to a hospital. He went into cardiac arrest and was unresponsive for 10 minutes. He was put on life support where he remained in a coma for several days. He was diagnosed with a pulmonary embolism, pneumonia, and an infection in his blood.

Wexford has a policy of cost cutting measures in providing health care and medical personal to inmates that results in imminent danger and health problems for the inmates including Plaintiff. Wexford places profits over inmate care, encourages its employees to avoid costly treatment by refusing medical treatment and monitoring, and pressures health care providers to deny or limit medical care. Wexford has a practice of hiring individuals who are either not suitable to, or under the conditions in which they work become unable to, provide inmates with the necessary medical care. Wexford fails to adequately supervise its employees and/or fails to discipline or discharge employees who repeatedly fail to provide inadequate care. Wexford understaffs Pinckneyville resulting in employees who are too overwhelmed or who become too

---

[1] Plaintiff also describes this exact scenario as occurring in January 2018 and states Assistant Warden Love was also present. It is not clear from the Complaint whether there were separate occurrences.

3

callous to the needs of the inmates to provide adequate care. Wexford does not provide adequate evaluations, monitoring, or treatment for inmates known to have chronic, and in some cases life threatening, medical conditions. Wexford's policies and practices allowed Dr. Batalid to retaliate and deny medical care to Plaintiff.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment claim against Dr. Batalid for deliberate indifference to Plaintiff's serious medical needs.

Count 2: First Amendment retaliation claim against Dr. Batalid for denying Plaintiff medical care in response to him filing grievances.

Count 3: Eighth Amendment claim against Thompson and Baldwin for deliberate indifference to Plaintiff's serious medical needs.

Count 4: Eighth Amendment claim against Wexford for deliberate indifference to Plaintiff's serious medical needs based on its policies and practices that resulted in a denial of medical care.
.
Count 5: Fourteenth Amendment due process claim against Defendants.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**Preliminary Dismissals**

Plaintiff refers to individuals in his statement of claim who are not named as defendants in the case caption, including Nurse Marsha, Nurse Danniel, Nurse Loddy, Assistant Warden Love, Lt. Wagner, Counselor Hall, and Counselor Loos. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Therefore, any claims intended against

4

the individuals not identified in the case caption are dismissed without prejudice.  *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding *pro se* Complaint failed to state a claim against individual mentioned in body of Complaint but not specified in the caption).

## Discussion

### Counts 1, 3, and 4

An Eighth Amendment claim based on the denial of medical care requires a plaintiff to show that (1) his medical condition was sufficiently serious, and (2) the defendants acted with deliberate indifference to his medical needs.  *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). The allegations in the Complaint are sufficient to proceed on the deliberate indifference claim in Count 1 against Dr. Batalid and Count 3 against Thompson and Baldwin.  Additionally, Plaintiff has stated a viable claim that he was denied medical care as a result of Wexford policies and practices in Count 4.  *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).  However, the doctrine of *respondeat superior* does not apply to § 1983 actions.  Thus, Plaintiff fails to state a *respondeat superior* claim against Wexford based on the acts/omissions of its employees.

### Count 2

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement.  *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).  To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983,

996 (7th Cir. 2014). Plaintiff's allegations are sufficient to proceed on a retaliation claim against Dr. Batalid.

### Count 5

Plaintiff alleges Defendants violated the Fourteenth Amendment right to due process by failing to follow written protocols, rules, and regulations for the treatment of inmates with serious medical needs. Because Plaintiff's claim that he was denied medical treatment specifically implicates the protections afforded by the Eighth Amendment, there is no occasion to invoke the limited protections of due process. *Albright v. Oliver,* 510 U.S. 266, 273 (1994) ( "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (plurality opinion of Rehnquist, C.J.) (internal quotations omitted). Moreover, § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or ... departmental regulations and police practices." *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003); *see also Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill.App.Ct. 2000) (prison regulations were "never intended to confer rights on inmates or serve as a basis for constitutional claims"). Accordingly, Count 5 will be dismissed for failure to state a claim.

### Injunctive Relief

Plaintiff's Complaint includes a request for injunctive relief. Accordingly, the Warden of Pinckneyville Correctional Center, in his/her official capacity, will be added to the docket with regard to the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

**Disposition**

The Complaint states colorable claims in Counts 1 and 2 against Dr. Batalid, Count 3 against R. Scott Thompson and John R. Baldwin, and Count 4 against Wexford Health Sources, Inc. Count 5 is **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **ADD** the Warden of Pinckneyville Correctional Center, in his or her official capacity, to the docket for purposes of Plaintiff's claim for injunctive relief.

The Clerk of Court shall prepare for Dr. Batalid, Thompson, Baldwin, Wexford, and the Warden of Pinckneyville Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit

Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED:  October 14, 2020            *s/ Staci M. Yandle*
                                    **STACI M. YANDLE**
                                    **United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.